## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.* | : | Case No. 07-10416 (KJC) |
| Debtors | : | |
| | : | |
| **ANITA B. CARR,** | : | Adv. Pro. No. 09-52251 (KJC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.* | : | Re: docket nos. 53, 65 |
| | : | |
| Defendants | : | |

# MEMORANDUM [1]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Currently before the Court for consideration are the following pleadings filed by Anita B. Carr (the "Plaintiff") in the above-captioned adversary proceeding: (1) the Request for Stay of Dismissal and for Evidentiary Hearing (Adv. Docket No. 53) (the "Request to Stay Dismissal"), and (2) the Emergency Request for Order to Show Cause (Adv. Docket No. 65) (the "Request for a Show Cause Order"). The New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the "Trustee") filed responses objecting to the relief sought

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

by the Plaintiff.[2] (Adv. Docket Nos. 57, 70) An evidentiary hearing to consider the Requests was held on April 20, 2011. For the reasons provided below, the Plaintiff's Request to Stay Dismissal and the Request for a Show Cause Order are denied.

## Background

On October 5, 2009, the Plaintiff commenced an adversary proceeding by filing a complaint against the Debtors asserting claims for (i) fraudulent conveyance, (ii) violation of chapter 11 of the Bankruptcy Code, (iii) fraudulent misrepresentation and negligence, (iv) violation of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.*, (v) violation of the Business and Professions Code Section 17200 *et seq.*, (vi) violation of RESPA 12 U.S.C. 2605, and (vii) quiet title to real property against all defendants (collectively, the "Causes of Action"). The Causes of Action arise out of a loan transaction between the Plaintiff and Debtor Home123 Corporation entered into on or about January 25, 2006.[3]

On November 10, 2009, the Trustee filed a Motion to Dismiss the Adversary Proceeding Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (the "Trustee's Motion to Dismiss"). The Plaintiff filed an objection to the Trustee's Motion to Dismiss on November 19, 2009, and, after additional filings, a Notice of Completion of Briefing regarding the Trustee's Motion to Dismiss

---

[2] On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905). The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation.

[3] Copies of the loan documents are not part of the record made on April 20, 2011, but the parties' filings indicate (and there is no dispute) that the loan transaction involved a promissory note signed by the Plaintiff in favor of Home123 Corporation, which was secured by a deed of trust against the Plaintiff's real property located in Dublin, California. The property has since been the subject of a foreclosure sale.

was filed on December 24, 2009. (Adv. Docket No. 23).

The Plaintiff also filed an unliquidated unsecured claim against the Debtors on August 24, 2009 (the "Proof of Claim"), and a motion to consider her claim timely filed. (New Century Docket No. 9975). On January 20, 2010, with the consent of the Trustee, the Court entered an order granting the motion to consider the Plaintiff's proof of claim as timely filed. (New Century Docket No. 10017).

On or about October 5, 2010, the Trustee and the Plaintiff entered into a Settlement Agreement. (Plaintiff Ex. D) Under the Settlement Agreement, the Trustee agreed to pay a Settlement Sum of $65,000 "in full and final satisfaction of the Causes of Action and any other claim(s) that [Plaintiff] may have against the Debtors or the Trust." (*Id.* at p. 5.) The Plaintiff acknowledged that the Settlement Sum was paid to her. (Tr. at 63; *see also* Tr. at 76.)

On November 2, 2010, the Plaintiff filed a notice of voluntary dismissal asking that this adversary proceeding be dismissed with prejudice in accordance with the terms of the Settlement Agreement. (Adv. Docket No. 52) On November 3, 2010, the Adversary Proceeding was closed.

On December 13, 2010, the Plaintiff filed her Request to Stay Dismissal, arguing that dismissal of her adversary proceeding should be stayed because she obtained new evidence demonstrating that the Trustee made false representations to induce her to enter into the Settlement Agreement.[4] Specifically, she alleges that the Trustee fraudulently represented that

---

[4] I treat the two Requests, in part, as motions to reopen this adversary proceeding. *See Sun Healthcare Group, Inc. v. Mead Johnson Nutritional (In re Sun Healthcare Group, Inc.),* 2004 WL 941190, at *1 (Bankr.D.Del. April 30, 2004) (Bankruptcy Code Section 350 applies only to reopening bankruptcy cases, not adversary proceedings. "Adversary proceedings in bankruptcy cases are procedurally analogous to civil actions filed in district courts. A district court does not need an independent basis to reopen a civil proceeding before considering a motion for relief from a judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Rather, such a motion is deemed a continuation of the original proceeding.")

3

the Debtors had properly assigned and transferred her loan prior to the chapter 11 filing. The Plaintiff claims that in December 2010 she obtained a copy of the log book for the notary who notarized the signature of "Stephen L. Nagy, V.P. Records" of Home123 Corporation which appears on the Corporation Assignment of Deed of Trust dated May 22, 2007 and filed on June 15, 2007 with the Clerk-Recorder's Office, Alameda County, California (the "Assignment"). (Plaintiff Ex. A). The Plaintiff claims that the notary log provides new evidence that questions the authenticity of Stephen L. Nagy's signature, thus making the Assignment invalid and the Trustee's representations about the assignment false.[5]

The Trustee objects to the Request to Stay Dismissal, arguing that the issues about Debtors' assignment of the loan and deed of trust were raised by the Plaintiff prior to signing the Settlement Agreement and, therefore, were part of the released claims.

On March 10, 2011, the Plaintiff filed the Request for a Show Cause Order asking the Court to require the Trustee to show cause why the Court should not issue an order staying all proceedings based on documents notarized by certain individuals employed by the Debtors and, further, ordering the Trustee to produce "notarial journals." The Plaintiff argues that supervisors employed by Home123 Corporation and other Debtors instructed certain notary-employees to notarize documents purporting to transfer and assign mortgages in a manner contrary to

---

[5] Based on the new evidence, the Plaintiff argues, among other things, that (i) the log does not have an entry for notarizing a document for Stephen L. Nagy ("Nagy") on that date, (ii) the signature on the Corporation Assignment of Deed does not match Nagy's signature as recorded in the log, and (iii) that notary did not obtain a drivers license number for Nagy. The Trust objected to the admission of the copy of the notary log into evidence as hearsay. The Trust's objection was sustained. (Tr. at 46.) The Plaintiff asked the Court to keep the record open so she could depose Nagy and the notary and address the Trustee's objection to the notary log. For the reasons set forth herein, I conclude that the Plaintiff's claims related to the Assignment have been released and any further discovery on this issue would be futile. The request to keep the record open is denied.

California law.  The Trustee objects to the Request for a Show Cause Order, arguing that the clear language of the release in the Settlement Agreement bars the request and, further, that the Court lacks jurisdiction to hear the request.

## Discussion

1. <u>The Request to Stay Dismissal</u>

The Trustee argues that the release in the Settlement Agreement bars the relief sought in the Plaintiff's Request to Stay Dismissal. The Plaintiff, however, claims that she was fraudulently induced to enter into the Settlement Agreement.  The applicability of a release to certain claims is governed by state law.  *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

Before engaging in a choice of law analysis, a court should consider whether there exists a true conflict between the application of Delaware and California law.  *Williams*, 109 F.3d at 893.  Delaware law provides that a general release in a settlement agreement does not bar a claim for fraud in the inducement of the release. *E.I. DuPont DeNemours and Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999).  A party who pursues such a fraudulent inducement claim may elect rescission and restoration to the *status quo ante*, or alternatively, may bring a separate suit for fraud with damages calculated on the difference between that received under the release and the value of the settlement or recovery achieved had there been no fraud by the released party. *Id.* at 458, 465.  California law, however, requires a party pursuing a claim for fraudulent inducement in the granting of a release to first rescind the contract, returning any consideration received as a condition of rescission before judgment.  *Village Northridge Homeowners Assoc. v. State Farm Fire and Casualty Co.,* 50 Cal.4th 913, 921-22, 237 P.3d 598, 602 (2010).  If restoration of the consideration is impossible because the settlement money has

been spent, "the financially constrained parties can turn to section 1693 [Cal.Civ.Code §1693] to delay restoration until judgment, unless the defendants can show substantial prejudice." *Id.*, 50 Cal.4th at 930, 237 P. 2d at 609.

There is no choice of law provision in the Settlement Agreement. Although the Plaintiff cites to California law in her pleadings, this Court must apply the Delaware choice of law rules to determine which state law applies here. *Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 359 (Bankr.D.Del. 2006) citing *In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005)(applying the choice of law rules of the state in which the bankruptcy court sits).

For contractual issues, Delaware courts apply the "most significant relationship" test and determine which state's law applies by analyzing the contacts set forth in the Restatement (Second) Conflict of Laws Section 188. *Liggett Group Inc. v. Affiliated FM Ins. Co.,* 788 A.2d 134, 137 (Del. Super. Ct. 2001), *Sellon v. General Motors Corp.,* 521 F.Supp. 978, 981 (D.Del. 1981). Section 188 provides:

<u>§188. Law Governing In Absence Of Effective Choice By The Parties</u>

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
   (a)   the place of contracting,
   (b)   the place of negotiation of the contract,
   (c)   the place of performance,
   (d)   the location of the subject matter of the contract, and
   (e)   the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

>   (3)  If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) Conflict of Laws, §188 (2011). A Court should not simply tally the contacts between jurisdictions, but must evaluate the contacts according to their relative importance with respect to the particular issue and the principles of §6. *Liggett*, 788 A.2d at 138. The principles of §6 are as follows:

>   (a)  the needs of the interstate and international systems,
>   (b)  the relevant policies of the forum,
>   (c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>   (d)  the protection of justified expectations,
>   (e)  the basic policies underlying the particular field of law,
>   (f)  certainty, predictability and uniformity of result, and
>   (g)  ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Laws, §6(2). For this case, analyzing the contacts, alone, does not provide a clear answer. The Plaintiff is a resident of California and the Trust is established under the laws of New York. The place of contracting, place of negotiation, and place of performance for each party took place in his or her home state via telephone and email communications, thereby diminishing the value of these contacts. *Liggett,* 139-42. *See also Clark Equip. Co. v. Liberty Mutual Ins. Co.,* 1994 WL 466325, *2 (Del. Super. Ct. Aug. 1, 1994).

The subject matter of the Settlement Agreement is the full and final resolution of an adversary proceeding pending in this Court, related to the New Century main bankruptcy case, which is also pending in this Court. Delaware, as the forum state, has a natural interest in an agreement resolving litigation pending (and expending judicial resources) in a Delaware Bankruptcy Court. Moreover, the parties would be justified in expecting that Delaware law

would govern an agreement to settle a Delaware adversary proceeding.[6]  Applying Delaware law to an agreement that settles a Delaware proceeding also fosters certainty, predictability, and uniformity.  I conclude that the release in the Settlement Agreement should be construed in accordance with Delaware law.  The general release contained in the Settlement Agreement does not bar the Plaintiff from pursuing her Request to Stay Dismissal based on fraudulent inducement.

The record before me, however, does not support a conclusion that the Plaintiff was fraudulently induced into signing the Settlement Agreement.  First, there is no credible evidence of any misrepresentation by the Trustee in the record.  "A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon."  *Wilke v. Coinway, Inc.*, 257 Cal.App.2d 126, 64 Cal.Rptr. 845 (Cal.App. 1 Dist. 1967).  The Trustee and the Plaintiff engaged in informal

---

[6] The Plaintiff may have expected California law to apply to the Causes of Action and, in the absence of the Settlement Agreement, that might be reasonable.  See Restatement (Second) of Conflict of Laws, §145(1).  The dispute centers around a loan made to the Plaintiff, a California resident, by Debtor Home123 Corporation, a California corporation, that was secured by a deed of trust against real property located in California.  Even if I concluded that California law applied here, the Plaintiff would gain no advantage. As stated previously, under California law, the Plaintiff would be required to rescind the Settlement Agreement and return the Settlement Amount before pursuing a claim for fraudulent inducement.  The Request to Stay Dismissal contains neither a proposal to rescind the Settlement Agreement nor a pledge to restore the Settlement Amount.  The only discussion on this issue was raised at the hearing, when the following exchange took place:

| | |
|---|---|
| New Century Attorney: | [A]re you prepared to return the $60,000 dollars that the trust paid you based upon the settlement agreement that you executed? |
| Plaintiff: | Yes, but in the form of a note due and payable once I get my house back in my name. |
| New Century Attorney: | Now, the trust actually wired to you $60,000 dollars in money, not a note, correct? |
| Plaintiff: | Correct.  But I paid taxes. |
| New Century Attorney: | And you're not prepared to actually return $60,000 dollars in dollars, correct? |
| Plaintiff: | Correct, not at the moment. |

(Tr. at 69)  Accordingly, her Request to Stay Dismissal would not be permitted under a California law analysis.

discovery prior to executing the Settlement Agreement. At the hearing on April 20, 2011, the Trustee's counsel testified about the information given to the Plaintiff, including discussions about the Assignment and the signature thereon, that were based upon the Debtors' books and records. (Tr. at 80-86) There is no evidence in this record that the Trustee made any representations to the Plaintiff that he knew to be untrue or that were, in fact, untrue.[7]

Finally, the record here establishes that, at the time the Settlement Agreement was signed, the Plaintiff's issues regarding the Assignment and the authenticity of the signatures thereon were raised and discussed by the parties. In an email sent during the negotiations of the final draft of the Settlement Agreement and the Settlement Amount, the Plaintiff writes:

> I've recently received something from our Calif Secyt [*sic*] of State regarding your (NCMC & Home 123) notary Andres Rojas. The fellow who allegedly notarized my Corp. Deed of Assignment [*sic*]. I believe that this information will completely make that assignment invalid AND most likely any property related records that was [*sic*] allegedly notarized by him . . . that would mean for across the USA. . . . for thousands of New Century/Home 123 victims.

(Trustee Ex. 1). The record establishes that any claims regarding the validity of the Assignment were known to - - and asserted by - - the Plaintiff prior to the signing of the Settlement Agreement and, therefore, were included in the release. Delaware courts recognize the validity of general releases. *Deuly v. Dyncorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010). *Cunningham v. Walter*, 1998 WL 473007, *2 (Del.Super.Ct. April 2, 1998). "A clear and unambiguous release 'will only be set aside where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries.'" *Deuly*, 8 A.3d at 1163. Here, the record demonstrates that

---

[7]Likewise, there is no evidence that the Trustee knew about the contents of the notary journals, but failed to disclose the information. *See San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048, 37 Cal.Rptr.2d 501 (Cal.App. 4 Dist. 1995) ("Since . . . an affirmative obligation to disclose rests on the defendant's knowledge of significant facts the plaintiff needs but does not have, we conclude the duty cannot arise when, as here, such significant facts are not *actually* known to the defendant.")

9

nature of the Plaintiff's fraud claims against the Debtors arising from the Assignment were well-known to the Plaintiff at the time she signed the Settlement Agreement. The Plaintiff's later discovery of additional information about a known claim does not provide her with an opportunity to renegotiate the Settlement Agreement.

Because the Plaintiff's claims concerning the validity of the Assignment and the authenticity of the notarized signature thereon were released as part of the Settlement Agreement, the Motion to Stay Dismissal will be denied.

2.  The Request for a Show Cause Order

The Plaintiff's Request for a Show Cause Order asks the Court to require the Trustee to demonstrate why this Court should not issue an order (i) staying all proceedings based on documents notarized by certain notaries employed by the Debtors, and (ii) ordering the Trustee to produce "notarial journals." The Trustee objects to the relief requested.[8] First, for the reasons set forth above, the Plaintiff's claims based on the validity of documents notarized by the Debtors' notaries were known to the Plaintiff at the time she signed the Settlement Agreement and, therefore, have been released. The Plaintiff cannot request entry of a show cause order or further discovery from the Trustee based upon the released claims.

Second, there is nothing in the record to support a finding that this Court has jurisdiction

---

[8] On April 18, 2011, the Plaintiff filed an Objection to the Trustee's response to her Request for a Show Cause Order as untimely. The Plaintiff's Objection is overruled. Even assuming the Request for a Show Cause Order was treated as a motion subject to Local Rule 9013-1, the Plaintiff failed to send the Trustee a notice as required under Local Rule 9013-1(e) providing a date and time by which an objection was due. Moreover, the Trustee's response was filed seven days before the hearing as required by Local Rule 9006-1(c)(ii).

to issue a stay with such a broad reach. It appears that the Plaintiff's proposed stay order is intended to stop all proceedings involving loans that the Debtors transferred or assigned using documents notarized by the Debtors' employees, *including* loans (such as the Plaintiff's) that the Debtors transferred *pre-petition*. Under these circumstances, this Court has no jurisdiction to issue an injunction against non-debtor parties regarding loans in which the Debtors had no interest as of the commencement of the bankruptcy case. *See Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168-69 (3d Cir. 2004)(Post-confirmation, a bankruptcy court's jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement."). It follows that a show cause order is not appropriate.

## **Conclusion**

The record in this case does not support a finding that the Trustee fraudulently induced the Plaintiff to enter into the Settlement Agreement. For the reasons set forth above, I conclude that the Plaintiff released her claims related to the validity of the Assignment notarized by the Debtors' employees when she signed the Settlement Agreement. Therefore, the Request to Stay Dismissal and the Request for a Show Cause Order are denied.

An appropriate order follows.

                BY THE COURT:

                _____
                KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE

Dated: May 10, 2011